IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BAHRAM TARIGHI, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-26-1221 |
| SPECIALIZED LOAN SERVICING, LLC, et al. | * | |
| Defendants. | * | |

* * *

**MEMORANDUM OPINION**

THIS MATTER is before the Court on self-represented Plaintiffs Bahram Tarighi and Parvaneh Tarighi's (together, "Plaintiffs") Motion to Remand (ECF No. 8) and Defendants Specialized Loan Servicing, LLC ("Specialized"), HSBC Bank USA, National Association, as Trustee for Adjustable Rate Mortgage Trust 2005-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-1 ("HSBC"), and NewRez, LLC, d/b/a Shellpoint Mortgage Servicing, LLC's ("Shellpoint") (collectively, "Defendants") Motion to Dismiss (ECF No. 9). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the following reasons, the Court will deny the Motion to Remand and grant the Motion to Dismiss.[1]

[1] Also pending are Defendants' Motion for Leave to File Surreply (ECF No. 13) and Plaintiffs' Motion to Disregard Defendants' Notice of Non-Opposition and to Accept Plaintiffs' Response in Opposition ("Motion to Disregard") (ECF No. 19). For the reasons stated below, the Court will grant the Motion for Leave to File Surreply and deny as moot the Motion to Disregard.

## I. BACKGROUND[2]

In 2004, Plaintiffs Bahram Tarighi and Parvaneh Tarighi obtained a mortgage loan (the "Debt"), secured by a Deed of Trust, on their residence in Cockeysville, Maryland (the "Property"). (Compl. ¶¶ 1–2, 10, ECF No. 2). Defendant HSBC is the owner of the Debt. (Compl. Exs. at 29, ECF No. 2-1).[3] Defendant Specialized serviced Plaintiffs' loan from "around 2018 or 2019" until early 2023, when Defendant Shellpoint's parent company acquired Specialized, and Shellpoint assumed responsibility for servicing the loan. (Compl. ¶¶ 3, 5; Defs' Notice Removal ["Notice Removal"] at 1 n.1, ECF No. 1).[4]

The Deed of Trust required Plaintiffs to maintain hazard insurance on the Property for the duration of the loan term and provided that if Plaintiffs failed to maintain such insurance, the lender could obtain it at their expense. (Compl. ¶ 11; Compl. Exs. at 6). Plaintiffs state that they maintained hazard insurance on the Property from 2021 through 2023 and provided Specialized with documentation of the coverage. (Compl. ¶¶ 13–16). They allege that despite their maintenance of hazard insurance during that period, Specialized purchased insurance policies for the Property in 2021, 2022, and 2023 without giving them notice and charged the premiums to their escrow account. (Id. ¶¶ 17–19, 22). According to Plaintiffs, the force-placed insurance premiums created escrow overages and

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint (ECF No. 2) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[4] Specialized no longer exists as a separate entity. (Notice Removal at 1 n.1, ECF No. 1).

shortages, artificially inflated their loan account balance and alleged arrears, made their monthly mortgage payments unaffordable, and caused them to default on the loan. (Id. ¶¶ 19, 25–26). In addition, Plaintiffs assert that Specialized did not respond properly to their objections to the force-placed insurance policies; denied them adequate loss mitigation options and proceeded toward foreclosure while simultaneously engaging in deceptive loss mitigation practices; misapplied their mortgage payments; refused to provide them with accurate pay statements and misrepresented the debt that they owed; denied them access to their online account portal; and failed to respond to their written requests for information about their account. (Id. ¶¶ 27–28).

In 2022, substitute trustees initiated legal proceedings on behalf of "[HSBC] and/or [Specialized]" in the Circuit Court for Baltimore County to foreclose on the Property. (Id. ¶ 30); see Nadel v. Tarighi, No. C-03-CV-22-004324 (Cir.Ct.Balt.Cnty. filed Oct. 25, 2022). Between January 2023 and July 2025, Plaintiffs filed several motions to stay the foreclosure sale or to dismiss the foreclosure action under Maryland Rule 14-211, asserting that the statement of debt that served as the basis for the action was inaccurate because it had been inflated by improper insurance charges. (See Answering Br. Defs. at 2, 4–5, 7, ECF No. 9-2; Mot. Stay/Dismiss at 2–6, ECF No. 9-5; Mot. Stay Foreclosure Sale at 2–4, ECF No. 9-9). The Property was ultimately sold at a foreclosure auction on July 24, 2025, and the Circuit Court issued an order ratifying the sale on September 22, 2025. (Compl. ¶ 33; Final Order Ratification Sale ["Ratification Order"] at 2, ECF No. 9-11). Plaintiffs appealed from the Ratification Order, and the Appellate Court of Maryland dismissed the appeal on February 6, 2026. (See Dismissal Order at 2, ECF No. 9-12).

On January 30, 2026, Plaintiffs brought suit against Defendants in the Circuit Court for Baltimore County, (ECF No. 2), alleging breach of contract (Count I); violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., and its implementing regulations, 12 C.F.R. §§ 1024.1, et seq. (Count II); violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101, et seq. (Count III); and wrongful foreclosure (Count IV), and seeking compensatory, statutory, and treble damages; attorneys' fees and costs; pre-judgment and post-judgment interest; declaratory relief; and injunctive relief, (Compl. at 9–16, 20–22). On March 26, 2026, Defendants removed the action to federal court. (ECF No. 1). Plaintiffs filed their Motion to Remand on April 14, 2026, (ECF No. 8), and Defendants filed an Opposition on March 28, 2026, (ECF No. 11). Plaintiffs filed a Reply on May 15, 2026, (ECF No. 12), and on May 22, 2026, Defendants filed a Motion for Leave to File Surreply, (ECF No. 13).

On April 22, 2026, Defendants filed their Motion to Dismiss. (ECF No. 9). Subsequently, on May 22, 2026, Defendants filed a Notice of Non-Opposition to Motion to Dismiss. (ECF No. 14). Plaintiffs filed an Opposition on May 26, 2026, (ECF No. 16), and a Motion to Disregard Defendants' Notice of Non-Opposition and to Accept Plaintiffs' Response in Opposition on June 8, 2026, (ECF No. 19). Defendants filed a Reply on June 9, 2026. (ECF No. 18).

## II. DISCUSSION

### A. Motion to Remand

#### 1. Standard of Review

A defendant may remove a state court action to federal court if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over civil actions that arise under federal law, 28 U.S.C. § 1331, or have an amount in controversy exceeding $75,000, exclusive of interests and costs, and complete diversity of citizenship, 28 U.S.C. § 1332(a).

The party seeking removal carries the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). The Court must strictly construe removal jurisdiction because removal jurisdiction raises significant federalism concerns. Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). Congress has expressed a "clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Medish v. Johns Hopkins Health Sys. Corp., 272 F.Supp.3d 719, 722 (D.Md. 2017) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Accordingly, if federal jurisdiction is doubtful, the Court should grant a motion to remand. Mulcahey, 29 F.3d at 151.

"When a civil action is removed solely under [§] 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Defendants must do so "independently or by unambiguously joining in or consenting to another defendant's notice, within the thirty-day period

following service of process." Costley v. Serv. Prot. Advisors, LLC, 887 F.Supp.2d 657, 658 (D.Md. 2012) (quoting Anne Arundel Cnty. v. United Pac. Ins. Co., 905 F.Supp. 277, 278 (D.Md. 1995)).

**2. Analysis**

Defendants removed this action under 28 U.S.C. § 1331, invoking the Court's federal question jurisdiction over Plaintiffs' RESPA claims. (Notice Removal at 2–3). Plaintiffs do not challenge Defendants' assertion of federal question jurisdiction; instead, they argue that remand is necessary because Defendants did not file the Notice of Removal within thirty days after service of the Complaint on HSBC, as required under 28 U.S.C. § 1446(b)(1). (Pls.' Mot. Remand ["Mot. Remand"] at 1–2, ECF No. 8). Alternatively, Plaintiffs contend that the statement in the Notice of Removal that "[a]ll Defendants join in and consent to the removal of this action," (Notice Removal ¶ 17), without a separate, verified statement from HSBC, fails to satisfy the unanimity requirement under 28 U.S.C. § 1446(b)(2)(A). (Pls.' Reply Supp. Mot. Remand ["Pls.' Reply"] at 5–6, ECF No. 12). Defendants counter that removal was timely under 28 U.S.C. § 1446(b)(2)(C), the "Last-Served Defendant Rule," and that the Notice of Removal unambiguously represents that all properly served defendants consented to removal. (Defs.' Opp'n Mot. Remand ["Defs.' Opp'n"] at 2, ECF No. 11; Defs.' Surreply Resp. Pls.' Reply Supp. Mot. Remand ["Surreply"] at 3, ECF No. 13-1).[5] The Court agrees with Defendants.

[5] "[S]urreplies are highly disfavored in this District." Suchin v. Fresenius Med. Care Holdings, Inc., 715 F.Supp.3d 703, 710 (D.Md. 2024) (citing Medish v. Johns Hopkins Health Sys. Corp., 272 F.Supp.3d 719, 722 (D.Md. 2017)). "Surreplies, however, 'may be permitted when the moving party would be unable to contest matters presented to the court

In general, a defendant seeking to remove a civil action must file a notice of removal in the federal district court where the action is pending within thirty days of being served with the complaint. 28 U.S.C. § 1446(b)(1). In an action with multiple defendants, "[e]ach defendant," after being served, has its own thirty-day window within which to file a notice of removal. Id. § 1446(b)(2)(B). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." Id. § 1446(b)(2)(C). "This [provision] is known as the Last-Served Defendant Rule." Pittman v. Quest Diagnostics, Inc., No. ELH-15-3093, 2016 WL 540673, at *3 (D.Md. Feb. 11, 2016).

Here, Plaintiffs assert (and Defendants do not dispute) that they served Defendant HSBC on February 20, 2026. (Mot. Remand ¶¶ 5, 8; see Certified Mail Receipt HSBC, ECF No. 8-3; Defs.' Opp'n at 1–3). They served Defendant Shellpoint four days later, on February 24, 2026. (Mot. Remand ¶ 6; see Certified Mail Receipt Shellpoint, ECF No. 8-4; Defs.' Opp'n at 2). In other words, HSBC's thirty-day clock for removal under 28 U.S.C.

---

for the first time in the opposing party's reply.'" Medish, 272 F.Supp.3d at 722 (quoting Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003)). Here, Defendants move for leave to file a surreply to contest Plaintiffs' arguments that Defendants' Opposition relies on a different "timeliness theory" than the one stated in the Notice of Removal and that the Notice of Removal fails to satisfy the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A), which Plaintiffs raised for the first time in their Reply. (Defs.' Mot. Leave File Surreply at 1–2, ECF No. 13; see also Pls.' Reply Supp. Mot. Remand ["Pls.' Reply"] at 3–6, ECF No. 12). Given that Defendants would otherwise be unable to respond to these arguments, the Court will grant Defendants' unopposed Motion for Leave to File Surreply, (ECF No. 13), and will consider the arguments contained in Defendants' Surreply, (ECF No. 13-1), when considering Plaintiffs' Motion to Remand.

§ 1446(b)(2)(B) started to run on February 20, and Shellpoint's thirty-day clock began to run on February 24. Defendants filed their Notice of Removal on March 26, 2026, (ECF No. 1), after HSBC's thirty-day deadline had expired but before Shellpoint's thirty-day deadline expired. The Last-Served Defendant Rule, 28 U.S.C. § 1446(b)(2)(C), expressly permitted HSBC to consent to Shellpoint's timely removal, which it did, (see Notice Removal ¶ 17). Thus, removal was timely as to all Defendants.[6]

In addition, the Defendants unanimously consented to the removal. "[A] notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent

[6] Plaintiffs "do not dispute the existence of the Last-Served Defendant Rule," but they "do dispute that Defendants properly invoked it." (Pls.' Reply at 2). They point out that the Notice of Removal does not mention that they served HSBC on February 20, 2026. (Id.). Rather, the Notice of Removal states that "Plaintiffs served Defendants with process on February 24, 2026," and that "[r]emoval is timely under 28 U.S.C. § 1446(b)(1) because it is filed less than thirty days from the date of service of the summons." (Id. at 2, 4; Notice Removal ¶¶ 3, 16). Plaintiffs argue that "[a] removing party is bound by the jurisdictional theory and the factual allegations stated in its Notice of Removal" and describe Defendants' Opposition as an attempt to "retroactively recharacterize their § 1446(b)(1) removal as a § 1446(b)(2)(C) removal." (Pls.' Reply at 3–4). As Defendants correctly observe, however, "Plaintiffs seem to conflate this Court's jurisdiction . . . with the separate procedural issue of timeliness under 28 U.S.C. § 1446(b)." (Defs.' Surreply Resp. Pls.' Reply Supp. Mot. Remand at 2, ECF No. 13-1); see Enbridge Energy, L.P. v. Nessel, 146 S. Ct. 1074, 1081 (2026) ("'No one contends that [§ 1446(b)(1)] is jurisdictional,' given that 'it "does not expressly refer to subject-matter jurisdiction or speak in jurisdictional terms."'" (quoting McIntosh v. United States, 144 S. Ct. 980, 987 (2024))). A defendant must include in its notice of removal "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), which Defendants did here by invoking the Court's federal question jurisdiction under 28 U.S.C. § 1331, (Notice Removal at 2–3). Conversely, and contrary to Plaintiffs' assertion, a defendant does not need to state a particular "timeliness theory" in its notice of removal. (See Pls.' Reply at 3). Section § 1446(b) simply requires a defendant seeking to remove a civil action to file its notice of removal within a thirty-day period. 28 U.S.C. § 1446(b)(1).

for purposes of removal." Mayo v. Bd. of Educ., 713 F.3d 735, 742 (4th Cir. 2013). Here, counsel of record for all Defendants signed and filed the Notice of Removal, which represents unambiguously that "[a]ll Defendants join in and consent to the removal of this action." (Notice Removal ¶ 17). Thus, the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A) is satisfied.

The Court, therefore, will deny the Motion to Remand.

**B. Motion to Dismiss**

**1. Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several

exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

**2. Analysis**

Defendants assert that Plaintiffs' RESPA, MCPA, breach of contract, and wrongful foreclosure claims are barred by res judicata because Plaintiffs either raised or could have raised each of those claims in the state foreclosure proceedings. The Court agrees.

The doctrine of res judicata, or claim preclusion, "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009) (internal quotations omitted). Res judicata constitutes a ground for dismissal under Rule 12(b)(6). Davani v. Va. Dep't of Transp.,

434 F.3d 712, 720 (4th Cir. 2006) (citing Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000) (holding that dismissal on res judicata grounds is proper under Rule 12(b)(6) unless a disputed issue of material fact exists)). A Rule 12(b)(6) dismissal based on res judicata is only appropriate, however, when the basis for res judicata "clearly appears on the face of the complaint." Theune v. U.S. Bank. N.A., No. MJG-13-1015, 2013 WL 5934114, at *3 (D.Md. Nov. 1, 2013) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). Additionally, when considering a motion to dismiss on the grounds of res judicata, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." Mills v. SunTrust Banks, Inc., No. GJH-18-743, 2019 WL 1040492, at *1 (D.Md. Mar. 4, 2019), aff'd, 773 F.App'x 678 (2019) (quoting Andrews, 201 F.3d at 524). While the Court affords self-represented litigants "some leniency" with respect to res judicata, this Court has declined to "carve out a categorical pro se exception to the well-established rule of claim preclusion." Depaz v. Home Loan Servs., Inc., No. AW-10-3062, 2011 WL 1630323, at *3 (D.Md. Apr. 28, 2011).

In order for res judicata to bar a claim, three elements must be present: (1) the present parties are the same or in privity with the parties in the earlier dispute; (2) the earlier dispute was based upon the same cause of action; and (3) there has been a final judgment on the merits. See Ohio Valley, 556 F.3d at 210 (internal citations omitted); accord Anne

Arundel Cty. Bd. of Educ. v. Norville, 887 A.2d 1029, 1037 (Md. 2005).[7] Plaintiffs contend that none of these three elements are present here. (Pls.' Opp'n Defs.' Mot. Dismiss ["Pls.' Opp'n"] at 4, 8, ECF No. 16).[8] The Court will address each element in turn.

**1. Same parties or privity**

With regard to the first element, Plaintiffs note that Shellpoint and Specialized were not named parties to the state foreclosure proceeding. (Pls.' Opp'n at 8).[9] They contend that Defendants' invocation of a "generalized 'mutuality of interest'" between Shellpoint and Specialized as the servicers of Plaintiffs' mortgage loan and the substitute trustees who brought the state foreclosure action is insufficient to establish privity. (Id.; see Defs.' Mem.

[7] Because the foreclosure proceeding was a state court matter in Maryland, the preclusive effect of res judicata on the claims raised therein is determined by reference to Maryland law. Jacobs v. Venali, Inc., 596 F.Supp.2d 906, 913 (D.Md. 2009).

[8] Defendants filed their Motion to Dismiss on April 22, 2026. (ECF No. 9). Under Local Rule 105.2(a) (D.Md. 2025) and Federal Rule of Civil Procedure 6, Plaintiffs then had until May 11, 2026, to oppose the motion. See Local Rule 105.2(a) (D.Md. 2025) ("Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion . . . ."); Fed.R.Civ.P. 6(d) ("When a party may or must act within a specified time after being served and service is made [by mail] . . . 3 days are added after the period would otherwise expire . . . ."); id. at 6(a)(1)(C) ("When the period is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). On May 22, 2026, Defendants filed a Notice of Non-Opposition to Motion to Dismiss, noting that Plaintiffs had yet to respond to their motion and asking the Court to treat the motion as unopposed. (Defs.' Notice Non-Opp'n Mot. Dismiss at 1–2, ECF No. 14). On May 26, 2026, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss. (ECF No. 16). On June 8, 2026, they filed a Motion to Disregard Defendants' Notice of Non-Opposition and to Accept Plaintiffs' Response in Opposition. (ECF No. 19). The Court will exercise its discretion to consider Plaintiffs' untimely opposition and will therefore deny Plaintiffs' motion as moot.

[9] Plaintiffs indicate in the Complaint that "HSBC, as Trustee under the Deed of Trust, has been or is a party to the underlying mortgage transaction and foreclosure action at various times." (Compl. ¶ 4, ECF No. 2). Accordingly, they do not dispute that HSBC was a party to or in privity with the parties to the foreclosure action.

at 10). This argument misses the mark.

"Privity in the res judicata sense generally involves a person so identified in interest with another that he represents the same legal right." Anyanwutaku v. Fleet Mortg. Grp., Inc., 85 F.Supp.2d 566, 571 (D.Md. 2000). This Court has found loan servicers and the substitute trustees that prosecuted a state foreclosure action to be in privity for res judicata purposes. See, e.g., Proctor v. Wells Fargo Bank, N.A., 289 F.Supp.3d 676, 683 (D.Md. 2018) (finding that servicer, lender, and substitute trustee were in privity where substitute trustee prosecuted state court foreclosure action on behalf of mortgage servicer); Young v. Ditech Fin., LLC, No. PX-16-3986, 2017 WL 3066198, at *6 (D.Md. July 19, 2017) (finding noteholder, substitute trustees, and loan servicer were in privity for res judicata purposes); Oikemus v. Fid. Mortg. Servs., Inc., No. WMN-13-3899, 2014 WL 4272022, at *1 (D.Md. Aug. 28, 2014) (finding "holders or servicers of the Note and Deed of Trust" to be in privity with substitute trustees). Plaintiffs acknowledge that Specialized serviced their mortgage loan from "around 2018 or 2019" until 2023, when Shellpoint took over as the loan servicer. (Compl. ¶¶ 3, 5). In addition, they claim that "[HSBC] and/or [Specialized]" initiated the foreclosure action in 2022. (Id. ¶ 30). As Defendants contend, Specialized, Shellpoint, and the substitute trustees who prosecuted the state foreclosure action share a mutuality of interest with respect to the Debt. (See Defs.' Mem. at 10). Thus, it is evident from the face of the Complaint and the state court record that they are in privity for res judicata purposes, and the first element of res judicata is satisfied.

**2. Same cause of action**

In regard to the second element, the Court "need not find that the plaintiff in the

second suit is proceeding on the same legal theory . . . advanced in the first suit." Ohio Valley, 556 F.3d at 210. Rather, so long as "the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect." Id. (internal quotations omitted); accord Kent Cty. Bd. of Educ. v. Bilbrough, 525 A.2d 232, 238 (Md. 1987) (approving use of the "transaction" test to determine claim preclusion); see also Boyd v. Bowen, 806 A.2d 314, 325 (Md.Ct.Spec.App. 2002) (noting that "[u]nder the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose"). Accordingly, the Court must assess whether Plaintiffs' RESPA, MCPA, breach of contract, and wrongful foreclosure claims arise out of the same transaction at issue in the state foreclosure proceedings. The Court finds that they do.

Plaintiffs allege, in Count II of the Complaint, that Specialized violated RESPA and its implementing regulations by charging them for force-placed hazard insurance without a reasonable basis to believe that they had failed to maintain their own hazard insurance on the Property; failing to provide proper notice before purchasing force-placed insurance; failing to cancel the force-placed insurance policies, remove the force-placed insurance premiums from their escrow account, and refund them for any duplicative payments after receiving evidence that they had purchased their own hazard insurance; and failing to timely acknowledge, investigate, or respond to written notices of error disputing charges to their escrow account. (Compl. ¶¶ 43–50); see 12 U.S.C. § 2605(k)–(l) (prohibiting a loan servicer from obtaining force-placed hazard insurance without a reasonable basis to believe

that a borrower has failed to maintain such insurance and listing requirements for the imposition of force-placed insurance); 12 C.F.R. § 1024.35(d)–(e) (2026) (requiring a loan servicer to acknowledge, investigate, and respond to a borrower's notice of error); id. § 1024.37(b)–(d) (prohibiting a loan servicer from charging a borrower for force-placed insurance without a reasonable basis to believe that the borrower has failed to maintain hazard insurance and without first satisfying specific notice requirements). In Count III, Plaintiffs allege that Specialized and Shellpoint violated the MCPA by charging them for force-placed insurance in violation of RESPA, misrepresenting the amount they owed on their mortgage, proceeding toward foreclosure while simultaneously engaging in deceptive loss mitigation practices, and refusing to acknowledge or correct errors with their escrow account. (Compl. ¶ 54); see Md. Code Ann., Com. Law § 13-303(5) (2025) (prohibiting a person from engaging in "any unfair, abusive, or deceptive trade practice . . . in . . . [t]he collection of consumer debts"). In Count I, Plaintiffs allege that Specialized, by engaging in the same actions described in Counts II and III, breached the express terms of the Deed of Trust requiring it to comply with "all applicable laws," including RESPA, and breached the implied covenant of good faith and fair dealing inherent in all contracts under Maryland law. (Compl. ¶¶ 36–40); see Com. Law § 1-304 ("Every contract or duty within the Maryland Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."). Finally, in Count IV, Plaintiffs ask the Court to set aside the foreclosure sale, which they allege was "tainted" by Defendants' alleged violations of RESPA and Maryland law. (Compl. ¶¶ 61–68).

The Court agrees with Defendants that these claims are identical to those Plaintiffs

raised or could have raised in the foreclosure action. (See Defs.' Mem. at 11). During the foreclosure proceedings, Plaintiffs filed several motions to stay the foreclosure sale or to dismiss the foreclosure action, asserting that the statement of debt that served as the basis for the action was inaccurate because it had been inflated by force-placed insurance charges improperly imposed by Specialized. (See Answering Brief of Defendants at 2, 4–5, 7; Mot. Stay/Dismiss at 2–6; Mot. Stay Foreclosure Sale at 2–4). Similarly, in the present action, Plaintiffs claim that if Specialized had not purchased force-placed hazard insurance and charged the premiums to their escrow account, they would have been able to afford their monthly mortgage payments and would not have defaulted on the loan. (Compl. ¶¶ 25–26). In addition, all four counts of the Complaint rest on allegations of improper force-placed hazard insurance charges, and, as to Counts I and II, Plaintiffs request relief in the form of "[a]ll consequential damages" resulting from the foreclosure. (Id. ¶¶ 35–68).

It is evident from the face of the Complaint and the state court record that Plaintiffs' RESPA, MCPA, breach of contract, and wrongful foreclosure claims arise out of the same transaction at issue in the state foreclosure action, such that Plaintiffs could have raised these challenges during the pendency of that action. See Proctor, 289 F.Supp.3d at 684 (concluding that plaintiff's RESPA, breach of contract, and wrongful foreclosure claims were precluded by res judicata because they related to defendant's handling of her mortgaging loan, culminating in the foreclosure action); Prudencio v. Capital One, N.A., No. PWG-16-2693, 2016 WL 6947016, at *3 (D.Md. Nov. 28, 2016) (concluding that the second element of res judicata was satisfied where plaintiff's RESPA claims, among others, "could have been raised in the foreclosure action"); Osowiecki v. Ocwen Loan

Servicing, LLC, No. GLR-19-819, 2020 WL 779509, at *5 (D.Md. Feb. 18, 2020) (concluding that Plaintiff's RESPA claim was barred by res judicata because it arose "out of the same transaction at issue in the state foreclosure proceeding"); Bullock v. Ocwen Servicing, LLC, No. PJM-14-3836, 2015 WL 5008773, at *5–6 (D.Md. Aug. 20, 2015) (concluding that plaintiff's claim that defendants violated the MCPA by misleading him into believing that they could enforce the deed of trust securing his mortgage loan was barred by res judicata because "it could have been asserted it as [a] counterclaim[ ] in the foreclosure action"); Brown-Hyatt v. Brenner, No. SAG-25-1737, 2025 WL 2855769, at *1, *5 (D.Md. Oct. 8, 2025) (concluding that plaintiff's claims challenging the validity and enforceability of a state foreclosure were barred by res judicata). Accordingly, the second element of res judicata is satisfied.

**3. Final judgment on the merits**

Finally, Plaintiffs contend that the third element of res judicata has not been met because there is no final judgment on the merits resolving their RESPA, MCPA, breach of contract, and wrongful foreclosure claims. (Pls.' Opp'n at 4–6). This contention misses the mark as well. "[W]hen a state court finalizes a foreclosure after the plaintiff was given an opportunity to raise all objections to the foreclosure sale of [a] property, that adjudication is final on the merits." McGhee v. JP Morgan Chase Bank, N.A., No. DKC-12-3072, 2013 WL 4495797, at *6 (D.Md. Aug. 20, 2013). As discussed above, Plaintiffs either raised or had an opportunity to raise each of the claims presented here during the foreclosure action. The Circuit Court issued an order ratifying the foreclosure sale of the Property, and the Appellate Court of Maryland dismissed Plaintiffs' appeal from the ratification order.

(Ratification Order at 2; Dismissal Order at 2). Thus, the state foreclosure proceeding constitutes a final judgment for preclusion purposes.

In sum, because Plaintiffs either raised or could have raised their RESPA, MCPA, breach of contract, and wrongful foreclosure claims before entry of judgment in the state foreclosure action, they are precluded from raising them in this Court. The Complaint, accordingly, must be dismissed.[10]

## III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion to Remand (ECF No. 8) and grant Defendants' Motion to Dismiss (ECF No. 9).[11] A separate Order follows.

Entered this 22nd day of October, 2026.

/s/
George L. Russell, III
Chief United States District Judge

[10] As a final matter, Plaintiffs contend that because Defendants removed this action under 28 U.S.C. § 1331, invoking the Court's federal question jurisdiction over Plaintiffs' RESPA claims, they cannot now assert that those same claims are barred by res judicata. (Pls.' Opp'n Defs.' Mot. Dismiss at 6, ECF No. 16). Whether the Court has subject matter jurisdiction to hear and decide a case and whether the case should be dismissed on the merits are two different questions, however. An invocation of the Court's jurisdiction over a claim is not an admission that the claim has merit.

[11] In addition, for the above reasons, the Court will grant Defendants' Motion to File Surreply (ECF No. 13) and deny as moot Plaintiffs' Motion to Disregard (ECF No. 19).